Filed 3/16/26  P. v. Torres CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARTHUR TORRES,<br><br>    Defendant and Appellant. | B343622<br><br>(Los Angeles County<br>Super. Ct. No. BA189759)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed on February 19, 2026, is modified as follows:

On page 2, the first sentence should be deleted and replaced with the following sentence:  "In 2001, Arthur Torres was convicted of 17 criminal offenses, including three counts of first degree murder, committed when he was 23 years old."

The petition for rehearing is denied.

There is no change in the judgment.

_____

HOFFSTADT, P. J.          MOOR, J.          KIM (D.), J.

Filed 2/19/26  P. v. Torres CA2/5 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>ARTHUR TORRES,<br><br>　　　Defendant and Appellant. | B343622<br><br>(Los Angeles County<br>Super. Ct. No. BA189759) |

　　　APPEAL  from an order of the Superior Court of Los Angeles County, Jacqueline H. Lewis, Judge.  Affirmed.

　　　William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General for Plaintiff and Respondent.

In 2001, when he was 23 years old, Arthur Torres was convicted of 17 criminal offenses, including three counts of first degree murder. The jury found true multiple murder special circumstance allegations, as well as the special circumstance allegations that two of the murders were committed during the commission of an attempted robbery and that the third murder was committed during the commission of a kidnaping. Torres's sentence included three terms of life without parole (LWOP) for the murders and associated special circumstances.

Torres appeals the trial court's denial of his request that the court (1) conduct a hearing to preserve evidence for use at a future youth offender parole hearing pursuant to section 1203.1 (*Franklin* hearing), and (2) order the state to provide him a youth offender parole hearing pursuant to Penal Code[1] section 3051.

Torres contends that his exclusion from youth offender parole consideration as a person sentenced under the Three Strikes law was error, and that section 3051 violates the constitutional right to equal protection of the laws and the prohibition on cruel or unusual punishment.

We affirm the trial court's order.

## FACTS[2]

Torres and codefendant Nicholas Rodriguez engaged in

---

[1] All further statutory references are to the Penal Code.

[2] The facts are taken from the prior unpublished appellate opinion. (*People v. Torres* (Mar. 17, 2003, B152866) [nonpub. opn.] at page *1.)

three separate sequences of illegal conduct on the evening of May 11, 1999 that formed the basis of 18 of the 19 criminal charges upon which they were later indicted.

First, at a La Puente car wash, Torres pointed a handgun at Paul Nieto, demanded Nieto's money, and searched Nieto's pockets for additional items. Torres then passed the gun to Rodriguez and took some personal items from Nieto's car. Torres attempted to start the car, but failed because Nieto had activated the car's "kill switch." Torres struck Nieto in the head. Nieto heard someone call, "Waste him. Waste him," and Nieto fled.

Next, Torres and Rodriguez approached four young men walking down a La Puente street. Brothers Tommy and Christopher Garnica and their friends Sergio Salcedo and Juan Gonzalez were on foot when Torres's car stopped alongside them. Rodriguez exited the car, pointed a gun at the men, and demanded methamphetamine. Rodriguez waved the gun, and as he did so, the clip fell from the gun. As Christopher Garnica and Salcedo fled, Rodriguez retrieved and reinserted the clip and shot both Tommy Garnica and Gonzalez to death.

Later that evening, Torres and Rodriguez—now on foot—flagged down a car in which Humberto Salas and Isabel Morales were riding. When Salas exited the car to talk with Torres and Rodriguez, the two men severely beat Salas, smashed his head against the car, and kicked him. Torres and Rodriguez then put Salas into the back seat of the car and ordered Morales into the driver's seat. Torres sat in the front passenger seat of the car and told Morales to drive. While Morales drove, in the back seat Rodriguez continued to beat Salas and gouged out his eyes. Torres displayed one of the eyeballs to Morales before tossing it out the window. At a canyon area, Torres and Rodriguez dumped

3

Salas's body.  Returning to the car, the men forced Morales to drive them back toward the area where the encounter had begun. On the way, Torres and Rodriguez saw police officers and fled from the car.

## PROCEDURAL HISTORY

The jury found Torres guilty of three counts of first degree murder (§ 187; counts 11, 12 & 18), two counts of possession of a firearm by a felon (§ 12021, subd. (a)(1), counts 1 & 19), one count of assault with a firearm (§ 254, subd. (a)(2); count 2), two counts of second degree robbery (§ 211, counts 3 & 5), one count of attempted carjacking (§§ 215/664, count 6), four counts of attempted second degree robbery (§§ 211/664, counts 7, 8, 9 & 10), one count of carjacking (§ 215, subd. (a), count 13), one count of kidnapping (§ 207, subd. (a), count 14), one count of kidnapping for carjacking (§ 209.5, subd. (a), count 15), and one count of torture (§ 206, count 17).[3]

The jury found true the special circumstance allegations that the murders charged in counts 11 and 12 were committed during the commission of an attempted robbery (§ 190.2, subd. (a)(17)), the murder charged in count 18 was committed during the commission of a kidnapping (§ 190.2, subd. (a)(17)), and that, as to counts 11, 12, and 18, Torres committed multiple murders (§ 190.2, subd. (a)(3)).  The jury also found true the allegations that Torres personally used a firearm in the commission of count 2 (§ 12022.5, subd. (a)(1)) and count 3 (§ 12022.53, subd. (b)).  The allegation that Torres had suffered a prior serious

---

[3] Count 4 charged Rodriguez only.  The jury found Torres not guilty of aggravated mayhem (§ 205) in count 16.

4

felony conviction within the meaning of section 667, subdivision (a)(1) was found true.

The jury fixed the penalty for the murders in counts 11, 12, and 18 as LWOP.

At sentencing, the court found the following aggravating factors:  (1) the offenses were premeditated; (2) Torres engaged in a pattern of violent conduct  indicating a serious danger to society; (3) the crimes involved a high degree of cruelty, viciousness, and callousness; and (4) Torres's prior crimes were numerous and of increasing seriousness.  The court ordered that Torres's three LWOP sentences for the murders in counts 11, 12, and 18, be served consecutively.  The court further ordered that a term of life in prison with a minimum parole period of 14 years in count 15 be served consecutively.  The court stated that because Torres had a prior serious felony conviction, sentences for offenses served on separate occasions must be consecutive and each sentence must be doubled under the Three Strikes law.  The court imposed a total unstayed consecutive determinate sentence of 31 years, including five years for the prior serious felony enhancement (§ 667, subd. (a)(1)), to be served prior to the indeterminate terms.  The court imposed and stayed pursuant to section 654 sentences in counts 1, 2, 5, 9, 10, 14, and 17.

On direct appeal, the Court of Appeal ordered two of the three multiple-murder special circumstances stricken, but otherwise affirmed the judgment.

In 2024, Torres moved for a *Franklin* hearing pursuant to section 1203.1.  (*People v. Franklin* (2016) 63 Cal.4th 261; *In re Cook* (2019) 7 Cal.5th 439.)  The trial court denied the motion on the ground that youth offender parole hearings are not available for people serving LWOP sentences for an offense committed

5

after the offender attained 18 years of age.  (*People v. Hardin*
(2024) 15 Cal.5th 834 (*Hardin*); § 3051, subd. (h).)

## DISCUSSION

**A.** ***Legal Principles***

### 1. <u>Youth Offender Parole Hearings</u>

"California's youth offender parole statute offers
opportunities for early release to certain persons who are
incarcerated for crimes they committed at a young age.  (§§ 3051,
4801.)  When it was first enacted in 2013, the statute applied
only to individuals who committed their crimes before the age of
18; the purpose of the statute was to align California law with
then-recent court decisions identifying Eighth Amendment
limitations on [LWOP] sentences for juvenile offenders.  In more
recent years, however, the Legislature has expanded the statute
to include certain young adult offenders as well.  Under the
current version of the statute, most persons incarcerated for a
crime committed between ages 18 and 25 are entitled to a parole
hearing during the 15th, 20th, or 25th year of their incarceration.
(§ 3051, subd. (b).)"  (*People v. Hardin, supra*, 15 Cal.5th at
p. 838.)

The Legislature has prohibited certain defendants from
eligibility for the opportunity to obtain early parole.  Section
3051, subdivision (h) provides that the statute "shall not apply to
cases in which sentencing occurs pursuant to [s]ection 1170.12,
subdivisions (b) to (i), inclusive, of [s]ection 667 [(the Three
Strikes law)], or [s]ection 667.61, or to cases in which an

6

individual is sentenced to life in prison without the possibility of parole for a controlling offense that was committed after the person had attained 18 years of age.  This section shall not apply to an individual to whom this section would otherwise apply, but who, subsequent to attaining 26 years of age, commits an additional crime for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison."

## 2.    Franklin Hearings

In *Franklin*, *supra*, 63 Cal.4th at page 268, the defendant was convicted of first degree murder, which he committed when he was 16 years old.  The trial court sentenced him to two mandatory consecutive terms of 25 years to life.  (*Ibid*.)  Franklin appealed and the Court of Appeal affirmed the judgment and sentence.  (*Id*. at p. 272.)  The California Supreme Court granted review and affirmed, but remanded the matter, stating:  "It is not clear whether Franklin had sufficient opportunity to put on the record the kinds of information that sections 3051 and 4801 deem relevant at a youth offender parole hearing.  . . .  [¶]  If the trial court determines that Franklin did not have sufficient opportunity, then the court may receive submissions and, if appropriate, testimony pursuant to procedures set forth in section 1204 and rule 4.437 of the California Rules of Court, and subject to the rules of evidence.  Franklin may place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's

7

culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors. The goal of any such proceeding is to provide an opportunity for the parties to make an accurate record of the juvenile offender's characteristics and circumstances at the time of the offense so that the Board, years later, may properly discharge its obligation to 'give great weight to' youth-related factors (§ 4801, subd. (c)) in determining whether the offender is 'fit to rejoin society' despite having committed a serious crime 'while he was a child in the eyes of the law' (*Graham* [*v. Florida* (2010)] 560 U.S. [48,] 79)." (*Id.* at p. 284.)

## B.  *Analysis*

Torres contends that (1) he is not ineligible for a *Franklin* hearing and early parole under section 3051 as a person sentenced under the Three Strikes law; (2) section 3051 violates the California Constitution's guarantee of equal protection under the laws; and (3) the Legislature's amendments to section 3051 render his sentence cruel or unusual punishment under the California Constitution.

Because these are issues of constitutional and statutory interpretation, they present questions of law that we review de novo. (*People v. Scott* (2016) 3 Cal.App.5th 1265, 1272.)  " ' "[W]e review the [trial court's] ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm." ' [Citation.]" (*People v. Brooks* (2017) 3 Cal.5th 1, 39.)

### 1.    <u>Torres is Ineligible for Early Parole</u>

**Consideration Because He Was Sentenced**
**Under the Three Strikes Law**

Torres contends that he should not be barred from eligibility for a *Franklin* Hearing and youth offender parole hearing on the basis that he was sentenced under the Three Strikes law. He argues that the exclusion of strike offenders in section 3051, subdivision (h) should be read to apply only to youthful offenders who were sentenced under the Three Strikes law for their "controlling offense"—in this case, Torres was not sentenced under the Three Strikes law for his controlling offense, first degree murder with a true finding on a special circumstance. The People assert that Torres forfeited this argument by failing to raise it in the trial court. We conclude that even if Torres did not forfeit the claim, it fails on the merits.

"In interpreting a statute, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and common sense meaning. [Citation.] If there is no ambiguity, we presume the Legislature meant what it said and the plain meaning of the language governs. [Citation.]" (*People v. Brown* (2025) 111 Cal.App.5th 384, 386–387.)

Section 3051, subdivision (h) plainly states that the provision "shall not apply to cases in which sentencing occurs pursuant to [the Three Strikes law]." Torres does not contest that he was sentenced pursuant to the Three Strikes law. He instead asks us to ignore the plain language of the statute and to decide that the Legislature intended to restrict this exception to imposition of a Three Strikes law sentence for the "controlling offense," rather than for a defendant's sentence in its entirety.

9

Section 3051, subdivision (a)(2)(B) defines controlling offense as "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." Torres reasons that the LWOP sentences for his "controlling offenses" were not imposed pursuant to the Three Strikes law, so he is eligible for a *Franklin* hearing and a youth offender parole hearing.

We see no reason to ignore the plain language of the statute and insert a term of art that restricts the exception set forth in section 3051, subdivision (h), which the Legislature did not employ. The Legislature defined the term "controlling offense" in section 3051, subdivision (a)(2)(B), and used "controlling offense" in the statute six times. The Legislature did not use "controlling offense" to describe sentencing pursuant to the Three Strikes law in subdivision (h). The Legislature's repeated use of "controlling offense" in the statute and its omission of "controlling offense" in the phrase at issue clearly demonstrate that the Legislature did not intend to use the term when it described the Three Strikes exclusion. (See *People v. Buycks* (2018) 5 Cal.5th 857, 880, [" '[w]hen the Legislature "has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded" ' "].) As a defendant who was sentenced under the Three Strikes law, Torres is not eligible for a *Franklin* hearing or a youth offender parole hearing pursuant to section 3051.[4]

---

[4] Torres does not argue that his exclusion as a strike offender violates equal protection. As a strike offender who is ineligible for the benefits of section 3051, he is not a member of another class for purposes of equal protection. Accordingly, we do not address other equal protection arguments raised in the opening brief.

## 2. Torres's Sentence is Not Cruel or Unusual Punishment

Torres argues that, although his three LWOP sentences were constitutional at the time they were imposed, the Legislature's amendments to section 3051 that extended the definition of youth to include young adults up to and including young adults 25 years of age rendered those sentences cruel or unusual punishment in violation of the California Constitution. We reject the contention.

Article I, section 17 of the California Constitution provides: "Cruel or unusual punishment may not be inflicted or excessive fines imposed." In assessing a claim of cruel or unusual punishment we must "decide whether the penalty given 'is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity . . . .' " (*People v. Cunningham* (2001) 25 Cal.4th 926, 1042.)

In *In re Williams* (2020) 57 Cal.App.5th 427, 430 (*Williams*), the defendant was 21 years old when he committed two murders during a robbery. The trial court sentenced him to LWOP. (*Ibid.*) The defendant later filed a petition for writ of habeas corpus claiming, in part, that the denial of a section 3051 youth offender parole hearing constituted cruel and unusual punishment under the Eighth Amendment. (*Id.* at p. 439.)

A prior panel of this division rejected Williams's claim. The appellate court held, "To the extent petitioner contends an LWOP sentence is an unconstitutional cruel and unusual punishment when imposed on *any* 21-year-old defendant[—i.e., on a young

11

adult offender—]we observe our Supreme Court has essentially rejected that very argument in the context of the death penalty. In *People v. Flores* (2020) 9 Cal.5th 371, 429 . . . , the court acknowledged research that youths ages 18 to 21 share many of the same cognitive and developmental deficiencies as adolescents under age 18.  Quoting from the court's earlier opinion in *People v. Powell* (2018) 6 Cal.5th 136, 192 . . . , the court nonetheless held that 18 is ' "the age at which the line for death eligibility ought to rest." '  If the Eighth Amendment does not prohibit a sentence of death for 21-year-olds, then most assuredly, it does not prohibit the lesser LWOP sentence."  (*Williams, supra,* 57 Cal.App.5th at p. 439, fn. omitted.)  Accordingly, we reject Torres's contention that section 3051, subdivision (h) rendered his LWOP sentence cruel or unusual.[5]

## DISPOSITION

We affirm the trial court's order denying Torres's motion pursuant to Penal Code section 1203.1 for a *Franklin* hearing and a youth offender parole hearing.

NOT TO BE PUBLISHED.

---

[5] In his appellate briefing, Torres notes that he argued in the Superior Court that prosecutorial charging decisions involving juveniles with LWOP sentences could implicate violations of the Racial Justice Act, and as a consequence section 3051 may perpetuate those violations.  He has not, however, attempted to state a claim regarding the charging decisions in his case under the Racial Justice Act, and does not make or develop any understandable or cognizable claim under the act on appeal.

12

MOOR, J.

WE CONCUR:


HOFFSTADT, P. J.


KIM (D.), J.


13